**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SIMON CHEFFINS and GREGORY JONES, | 3:09-cv-00130-RAM |
| Plaintiffs, | |
| vs. | **ORDER** |
| MICHAEL B. STEWART, | |
| Defendant. | |

Before the court is Defendant's motion for summary judgment (Doc. #61). Plaintiffs have opposed the motion (Doc. #69), and Defendant has replied (Doc. #71). Also before the court are Plaintiffs' motions for partial summary judgment (Doc. #60 & Doc. #62). Defendant has opposed the motions (Doc. #67 & Doc. #68), and Plaintiffs have replied (Doc. #72 & Doc. #73).

**I.   Factual Background**

Plaintiffs Simon Cheffins ("Cheffins") and Gregory Jones ("Jones") (collectively "Plaintiffs") bring this action against Defendant Michael Stewart ("Defendant") alleging conversion and violation of their rights under the Visual Artists Rights Act, 17 U.S.C. § 106A (Doc. #1). The complaint stems from Defendant's destruction of La Contessa, an artwork described by Plaintiffs as a "mobile, interactive replica of a 16th Century Spanish galleon," on or about December 5, 2006 (*Id*. at 3). Plaintiffs created La Contessa and claim to be its owners. They seek statutory, property loss, and punitive damages, attorney and expert witness fees, and

1

costs.[1] (*Id.* at 6).

La Contessa was an art piece resembling a Spanish galleon ship and built over a school bus. (Doc. #63 (Cheffins Dep. 14:25-15:4)). It appeared at the annual Burning Man festivals in 2002, 2003, and 2005. (*Id.* at 17:14-18, 45:6-15, 71:2-4, 101:13-17). Cheffins, an artist, initially conceived of La Contessa, and Jones, an engineer, helped in its design and construction. (*Id.* at 15:9-16:25, 20:11-19, 21:11-17; Doc. #61 Ex. 4 (Jones Dep. 14:6-19)). Cheffins and Jones began to discuss collaborating in the creation of La Contessa in or around April 2002. (Doc. #63 (Cheffins Dep. 20:22-21:10)).

On May 8, 2002, Cheffins received a $15,000 grant from Black Rock City LLC ("Burning Man") to support the construction of La Contessa.[2] (Doc. #61 Ex. 1; Doc. #63 (Cheffins Dep. 23:8-10)). In exchange, Cheffins granted Burning Man a five-year license to use La Contessa at its events, a right of first refusal in the event the artwork was sold, and a number of other rights. (Doc. #61 Ex. 1). After obtaining the grant, Cheffins bought and registered in California a used school bus. (Doc. #69 Ex. A; Doc. #63 (Cheffins Dep. 57:13-24)).

Over the next several months, Cheffins, Jones, and about seventy volunteers built La Contessa. (Doc. #63 (Cheffins Dep. 23:18-24, 28:2-30:2)). The grant money did not cover the total cost of construction. (*Id.* at 23:25-24:2)). In addition to the funds from Burning Man, the project required donated materials and volunteer labor, as well as out-of-pocket expenses of about $30,000. (*Id.* at 23:18-24, 24:3-8, 25:15-26:15).

Beginning in September 2003, La Contessa was stored on a ranch with the permission of the ranch's life estate tenant, Joan Grant. (*Id.* at 72:8-11, 74:17-22; Doc. #61 Ex. 3 (Def. Aff. ¶ 3)). Defendant, through his company Granite Investment Group, LLC, was at all relevant times the owner of the ranch. (Doc. #61 Ex. 3 (Def. Aff. ¶¶ 2-3)). Sometime in 2005, Grant

---

[1] Defendant has asserted counterclaims against plaintiffs for nuisance, trespass, and rents owed. (Doc. #6 at 3-4). The parties do not address the counterclaims in their motions for summary judgment.

[2] Cheffins testified and Plaintiffs' briefs state that both Cheffins and Jones received the grant. (See Doc. #63 (Cheffins Dep. 20:25)). However, only Cheffins' name is on the agreement. (*See* Doc. # 61 Ex. 1). Moreover, Jones testified that he was not involved in obtaining the grant. (Doc. #63 (Jones Dep. 12:24-13:1)).

moved off the ranch and abandoned her life estate, causing the property to revert to Defendant. (*Id.* ¶ 3).

Between the fall of 2005 and December 2006, Plaintiffs had limited contact with La Contessa. (Doc. #67 Ex. A (Cheffins Dep. 104:25-105:17); Doc. #61 Ex. 4 (Jones Dep. 48-52)). Some time after the property reverted to Defendant, one of his representatives notified Burning Man, but not Plaintiffs, that if La Contessa was not removed it would be destroyed. (Doc. #61 Ex. 3 (Def. Aff. ¶ 6)). On or about December 5, 2006, Defendant destroyed La Contessa by setting it on fire. (Doc. #63 (Def. Dep. 23:4-6)).

## II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material issue of fact is one that could affect the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The evidence is therefore viewed in the light most favorable to the party opposing the motion. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine

issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998). Finally, conclusory allegations unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Where the parties have filed cross-motions for summary judgment, the court must consider the motions separately and evaluate the evidence offered in support of each. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "[T]he filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a genuine issue as to any material fact exists." *Id.* (quoting *United States v. Fred A. Arnold*, 573 F.2d 605, 606 (9th Cir. 1978)).

**III.   Analysis**

    **A.   Conversion**

"Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006) (citing *Wantz v. Redfield*, 74 Nev. 196, 326 P.2d 413 (1958)). Intentional destruction of another's personal property is conversion. *See id.* (citing Restatement (Second) of Torts § 226). Conversion is an act of general intent, so it does not require wrongful intent and is not excused by care, good faith, or lack of knowledge. *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000). "Whether a conversion has occurred is generally a question of fact for the jury." *Id.*

Defendant makes only one argument in support of his motion for summary judgment on this claim. He asserts that Plaintiffs have not produced any evidence that they owned La Contessa and therefore they lack standing to bring a conversion claim. Plaintiffs respond that it is undisputed that they owned La Contessa.

Both Jones and Cheffins assert that they owned La Contessa and that they owned it jointly. (Doc. #69 Ex. B (Cheffins Aff. ¶ 4, 7); Doc. #63 (Jones Dep. 18:11-18); Doc. #69 Ex. B

4

(Cheffins Aff. ¶ 4, 7)). Cheffins believes that there are no competing claims to La Contessa, and Burning Man states that it had no ownership interest in it. (Doc. #69 Ex. B (Cheffins Aff. ¶¶ 9); *id.* Ex. C (Allen Aff. ¶ 3)). However, the only documentation supporting Plaintiffs' claim of ownership is the receipt showing Cheffins' purchase of the bus in 2002. (Doc. #69 Ex. A). Although Cheffins claims to have registered and insured the bus after he bought it, he provides no proof of registration or insurance. (*See* Doc. #61 Ex. 2 (Cheffins Dep. 57:8-60:3)). Moreover, Plaintiffs do not claim to have registered or insured the bus after its initial registration in 2002. (*Id.* at 57:8-59:23). Finally, Cheffins' and Jones' limited contact with La Contessa in the year before its destruction suggests possible abandonment.

Genuine issues of material fact exist as to whether Plaintiffs owned or had the right to possess La Contessa which preclude summary judgment in any party's favor. Accordingly, the motions for summary judgment on the conversion claim will be denied.

B. Visual Artists Rights Act

Pursuant to the Visual Artists Rights Act ("VARA"), the "author of a work of visual art" has the right:

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
>
> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

17 U.S.C. § 106A(a)(3). "Not every artist has rights under VARA, and not everything called 'art' is protected by such rights." *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003). "VARA protects only things defined as 'works of visual art,' a definition that is a 'critical underpinning of the limited scope of the Act.'" *Id.* (quoting H.R. Rep. No. 101-514, 101st Cong. 2d Sess. 13, *reprinted in* 1990 U.S.C.C.A.N. 6915, 6920-21) (internal alterations and citations omitted). A "work of visual art" is defined in relevant part as "a painting, drawing, print, or sculpture, existing in a single copy . . . ." or "a still photographic image . . . ." *Id.* § 101. Excluded from this definition is "applied art" and "any work made for hire." *Id.* Defendant argues that La

5

Contessa was not a work of visual art because: (1) it was not a painting, drawing, print, sculpture, or still photographic image; (2) it was applied art; and (3) it was a work made for hire.

La Contessa was not a painting, drawing, print, or still photographic image. (*See* Doc. #61 Ex. 2 (Cheffins Dep. 44:13-20)). Defendant argues that because La Contessa was not a sculpture "in the traditional sense," it was therefore not a sculpture, either. (*See id*. at 44:21-22). "The term sculpture includes, but is not limited to, castings, carvings, modelings, and constructions." H.R. Rep. No. 101-514, 101st Cong. 2d Sess. 11, *reprinted in* 1990 U.S.C.C.A.N. 6915, 6921. Cheffins' testimony that La Contessa was not a sculpture "in the traditional sense" does not mean that La Contessa was not a sculpture. The piece was a construction in the shape of a Spanish galleon. La Contessa was therefore a sculpture.

The court further does not agree with Defendant's assertion that La Contessa was a "work made for hire." A work made for hire is, in relevant part,

> a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

Defendant argues that Burning Man commissioned Cheffins to build La Contessa for the 2002 Burning Man event "as a contribution to a collective work" and that Cheffins was paid $15,000 for his efforts. The evidence shows, however, that the grant money was not compensation for Cheffins' time but rather was to be used for expenses and materials. (Doc. #61 Ex. 2 (Cheffins Dep. 23:8-21)). Moreover, the Artists' Agreement between Cheffins and Burning Man does not anywhere expressly state that La Contessa would be a work made for hire, nor does the agreement appear to contemplate such. (*See* Doc. #69 Ex. D). Accordingly, La Contessa was not a work made for hire.

A closer question is whether La Contessa was "applied art." Courts have defined applied art as "two- and three-dimensional ornamentation or decoration that is affixed to otherwise utilitarian objects." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 84-85 (2d Cir. 1995) (quoting

*Carter v. Helmsley-Spear*, 861 F. Supp. 303, 315 (S.D.N.Y. 1994)). The term "applied art" is not defined in either VARA or its legislative history. *See* 17 U.S.C. § 101; H.R. Rep. No. 101-514, 101st Cong. 2d Sess. 13, *reprinted in* 1990 U.S.C.C.A.N. 6915, 6923 (stating that the exclusions from the definition of works of visual art, including applied art, "are self-explanatory"). However, VARA is part of the Copyright Act, and that Act's legislative history notes that "works of 'applied art' encompass all original pictorial, graphic, and sculptural works that are intended to be or have been embodied in useful articles." H.R. Rep. 94-1476, 94th Cong. 2 Sess. (1976), *reprinted in* U.S. Code Cong. & Admin. News (1976). A "useful article" is one "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. By way of illustration, "VARA may protect a sculpture that looks like a piece of furniture, but it does not protect a piece of utilitarian furniture, whether or not it could arguably be called a sculpture." *Pollara*, 344 F.3d at 269.

La Contessa consisted of the facade of a Spanish galleon wrapped around an old school bus. (Doc. #63 (Cheffins Dep. 14:25-15:7)). The inside of the bus was made to look like the interior of a ship, and the roof's emergency exit was widened to allow access to the ship's deck. (*See id.* at 28:15-29:12). La Contessa was built so that it could be separated from the bus and rebuilt without it. (*Id.* at 82:13-14). According to Plaintiffs, La Contessa was too big to be driven on the highway when fully constructed. (*Id.* at 30:10-21). Thus, in 2002 La Contessa was transported in pieces from California, where it had been built, to the Burning Man event. (*Id.*) The bus drove on the highway, the parts of the facade were transported in the bus and on a semi-trailer, and the finished product was assembled once at its destination. (*Id.*) However, La Contessa fully assembled retained the ability to move, albeit at a reduced speed, and it carried people while it moved at the Burning Man event. (*Id.* at 39:2-40:11).

Defendant's expert G.B. Carson concludes that La Contessa was applied art because "[i]ts primary purpose . . . was to provide transportation and other uses . . . for the days long Burning Man festival and for the extreme revelries that characterize this event." (Doc. #61 Ex. 7 (Carson Rep. 2)). Plaintiffs' expert Harrod Blank concludes that La Contessa was not an "art car" because it was not driveable on public roadways when fully constructed. (*See* Doc. #62 at

17 (citing Doc. #31, #51, &#57)). He also states that "La Contessa "transcend[ed] the 'art car' genre" because it was "a part of [Cheffins'] identity and a mobile stage for his musical performances and more." (Doc. #32 (Blank Stmt. 6)). The assertion that La Contessa was not an art car does not necessarily mean that it was not applied art, however, and Plaintiffs have cited no expert opinion directly contradicting Carson's conclusion that it was.

A bus is a utilitarian object, the purpose of which is to move and transport people. La Contessa was built on top of a bus and retained the bus' innate function of movement and transport. La Contessa was thus a functional object. Plaintiffs argue that simply including a bus as part of an art piece does not make that piece applied art, citing *Carter*, 71 F.3d at 83. *Carter* held that a sculpture incorporating applied art, as opposed to constituting applied art, is not barred from VARA's protections. *Id.* While true that the mere incorporation of applied art would not render a sculpture ineligible for VARA's protections, La Contessa did not merely incorporate a utilitarian object. By virtue of its retention of the ability to move and transport people, however slowly, it remained a utilitarian object and thus constituted applied art. In addition, to the extent Plaintiffs assert that La Contessa was not applied art because it was a venue for performances, such an object is also functional and would constitute applied art, as well. Accordingly, as La Contessa was applied art, it was not a work of visual art, and Plaintiffs are thus not eligible for relief under 17 U.S.C. § 106A. Defendant's motion for summary judgment on Plaintiffs' VARA claim will therefore be granted, and Plaintiffs' motion for summary judgment will be denied.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. Conclusion

In accordance with the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (#61) is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Plaintiffs' claim under the Visual Artists Rights Act and **DENIED** as to Plaintiffs' claim of conversion.

2. Plaintiffs' motions for partial summary judgment (#60, #62) are **DENIED**.

DATED: January 20, 2011.

_____
UNITED STATES MAGISTRATE JUDGE